UNITED STATES of America

v.

George W. ANDERSON a/k/a "Asmar" Howard D. Dennis a/k/a "Ches" Edward Taylor a/k/a "Fast Eddie".

Crim. No. 87–00014.

United States District Court, E.D. Pennsylvania.

Sept. 16, 1987.

Ewald Zittlau, Asst. U.S. Atty., Philadelphia, Pa., for plaintiffs.

Vicki Ellen Herr, Michael M. Mustokoff, William T. Cannon, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This case comes before the court on post-trial motions alleging trial and pre-trial errors. All three defendants were charged with conspiracy to distribute heroin and cocaine, two of the defendants were charged with the actual distribution of heroin, and George Anderson was additionally charged with being engaged in a continuing criminal enterprise. In their post-trial motions, defendants contend that it was error not to receive the testimony of a United States Probation Officer, certain photographs should have been withheld from the jury, and evidence resulting from a vehicle-search should have been suppressed.

### I. Evidence from U.S. Probation Officer

Walter Dennis, the brother of the defendant, Howard D. Dennis, was a government witness and his testimony provided significant evidence against all three defendants. He stated that from October or November, 1984, until February, 1986, he sold both cocaine and heroin for George Anderson. On some occasions, he would turn the proceeds of his sales, up to $4000. a week, over to Anderson and in Anderson's absence, to his brother, Howard D. Dennis. He said that on five or six occasions he saw Anderson cutting and bagging cocaine and heroin and gave the names of other persons whom he considered to be workers for Anderson. One of those persons was Edward Taylor. Eventually, Walter Dennis was arrested, pleaded guilty, and was the subject of a pre-sentence report prepared by U.S. Probation Officer Edward J. Cosgrove.

Walter Dennis was cross-examined extensively. Inquiry was made concerning his prior convictions, his guilty plea, his bail reduction after he agreed to cooperate,

his employment status, his statements to the probation officer that he had found God even though he continued to sell drugs, his drug dealings, his payment of money so that he could cut and bag drugs at various locations, and his earnings from selling drugs. Thereafter, counsel for George Anderson wanted to call Probation Officer Cosgrove as a witness. Specifically, counsel said he would elicit from Cosgrove the fact that Cosgrove had determined Walter Dennis lied when he informed Cosgrove he had found God and become a contributing member of the community when in fact he was selling drugs. In addition, he wanted Cosgrove to testify concerning trips that Walter Dennis made to both Texas and to New York as well as Cosgrove's inability to determine what Dennis had done with the proceeds of his participation in illegal drug activity. Counsel stated that his purpose was to attack Dennis' credibility by showing past instances of untruthful statements and a reason and motive for him to lie as a witness. So far as motive was concerned, counsel said that Cosgrove's testimony would show that Walter Dennis had a reason to get Anderson off the street because he, Dennis, was a prominent drug dealer in the city of Chester.

Specific instances of the conduct of a witness, for the purpose of attacking his credibility (other than the conviction of crime), may not be proved by extrinsic evidence. Fed.R.Evid. 608(b). Thus, I refused to permit the testimony of Cosgrove insofar as it would amount to a simple contradiction of Dennis' testimony on cross-examination. Although the Federal Rules of Evidence do not mention impeachment by showing bias or motive, such testimony is always considered relevant. Anderson's counsel contends that the evidence from Cosgrove would have shown bias and thus motive to lie on the part of Walter Dennis.

In his brief, counsel argues that had Cosgrove testified

... he would have mentioned that during Dennis' period of probation supervision, Dennis stated on several occasions he had found God and reformed. At the same time, however, Dennis was making trips to New York and Texas which appeared to be drug related. Additionally, Cosgrove would have testified that Dennis misrepresented his employment status and concealed his ownership of assets. Taken together, these facts would have enabled defense counsel to argue a possible rivalry between Dennis and Anderson because Dennis was, in fact, dealing drugs during the time of his cooperation with the government. Counsel might have shown that Dennis was motivated to put Anderson out of the drug business and thereby enlarge his own drug enterprise. If believed, Cosgrove's testimony could have led the jury to conclude that Dennis was a liar motivated by protection of his own illicit dealings.

Fed.R.Evid. 103 states that error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by offer or was apparent from the context.

Here, no substantial right of any defendant was affected by my refusal to permit the testimony of Probation Officer Cosgrove. The credibility of Walter Dennis had been attacked by extensive cross-examination. Specifically, he admitted that he had used $10,000 from the proceeds of drug sales to buy a Cadillac automobile (N.T. 4–62), that he had sold drugs although he had found God (N–T 4–73), that he was not employed while he was on probation (N.T. 4–71–3), and that he had made a trip to Texas and at least seven or eight trips to New York (N.T. 4–76–7). Thus, Dennis had admitted on cross-examination the things that counsel said he wanted to prove by calling Probation Officer Cosgrove.

In addition, counsel's brief goes beyond the Rule 103 offer he made, both as to the facts and his contention as to the significance of those facts. But even if he had stated on the record the contentions advanced in his brief, they would have been unavailing—they simply do not show bias, or lead to a reasonable inference of bias, on the part of Walter Dennis.

Bias is a term used to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. *United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). Bias is a form of "emotional partiality." *United States v. Robinson*, 530 F.2d 1076 (D.C.Cir. 1976). If Probation Officer Cosgrove had testified he thought Dennis was a liar, Dennis had sold drugs although he said he had found God, Dennis made trips to New York and Texas, and that Cosgrove did not know what Dennis did with the proceeds of drug sales, it would not have tended to prove that Dennis was a rival or potential rival of Anderson. Counsel for Anderson contends, however, that those facts would have enabled him "to *argue* a *possible* rivalry" and that he *"might* have shown" that Dennis was motivated to lie so he could enlarge his own drug enterprise (emphasis added).

■ Testimony that bias exists is relevant because bias shows a motivation to lie. Here, counsel contends repetitive, collateral evidence should have been permitted so he could argue the possibilities of rivalry and if there was rivalry, the possibilities of motivation, and if there was motivation, the possibilities of untruthful testimony. Resourceful as the argument may be, it is too speculative, too remote, too attenuated. The possibility of a possibility could not have reasonably supported an inference of bias. *See, e.g., United States v. Moore*, 786 F.2d 1308 (5th Cir.1986) (trial court has broad discretion in determining how and why bias may be proved). What counsel really wanted was Probation Officer Cosgrove's testimony that in his opinion Walter Dennis was a liar as to collateral matters. Labelling counsel's efforts as a showing of bias did not make them so.

Counsel also wished to call another probation officer, Richard Andreozzi, to establish that another witness had made an inconsistent statement. I refused to permit him to do so because the statement would not have been inconsistent and because of the provisions of Fed.R.Evid. 608(b). The same comments that apply in the proffer of Probation Officer Cosgrove's testimony are applicable to the proffer of Probation Officer Andreozzi.[1]

## II. Other Allegations of Error

Counsel contend that it was error to permit three photographs to go to the jury because they bolstered that which was otherwise weak evidence of a conspiracy involving Anderson and an unindicted co-conspirator, George Jones.

■ There is nothing wrong with evidence that bolsters, strengthens, and corroborates other evidence. The pictures were not inflammatory. All were taken during the execution of a search warrant. One was of a bedroom closet at Jones' house, another showed a package of cocaine found inside that closet, and the third showed a wallet taken from the closet. The pictures were tied to the defendants, Anderson and Howard D. Dennis, by the testimony of Shawn Presberry who said he was at the Jones residence hours before the raid and helped Jones count money in Dennis' presence. This money was to go to Anderson who would use it for drug-purchases, drugs which the others would then sell.

There was no error in sending these exhibits to the jury.

## III. The Motion to Suppress

Lastly, defendants claim that it was error not to suppress evidence seized from them in a car-search on the New Jersey Turnpike. Defendants advance the same arguments post-trial as they did in their original motion to suppress. I reject their post-trial arguments for the reasons set forth on the record (N.T. 9–107–14). With respect to one issue, the admissibility of

---

1. I am not suggesting that a presentence report should ever be routinely made available for cross-examination or that probation officers may be called to testify about them. Fed.R. Crim.P. 32(c) requires the strictest of confidentiality be afforded to a report's contents and sources. *United States v. Anderson*, 724 F.2d 596 (7th Cir.1984); *United States v. Balliviero*, 708 F.2d 934, 943 (5th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 351, 78 L.Ed.2d 316 (1983).

the receipts for money seized from the defendants, I make two observations.

 First, the New Jersey troopers had probable cause to seize the money found in the car and on the person of Edward Taylor without consideration of the inadmissible statements the defendants later made. The officers knew that defendants were driving towards New York on a known drug route in a car owned by someone else, a procedure used by drug dealers to avoid forfeiture. The officers had found a large sum of money in small denominations, wrapped with rubber bands in small bundles. These bundles were in three bags. At the time of the stop, defendant Anderson stated that they won the money in Atlantic City and were on their way to Chester, however, the location where they were stopped and the way the money was packaged were not consistent with this story. Finally, a Chester police officer relayed that defendants were known drug pushers. Based on these facts, the police had probable cause to believe defendants were engaged in drug activity and that the money was drug-related. The money, therefore, was properly confiscated.

Second, defendant Anderson knowingly and voluntarily signed a "Consent to Search" form that authorized the police officer "to receive any letters, documents, papers, materials or other property which is considered pertinent to the investigation provided that I am subsequently given a receipt of anything which is removed." (Supp.N.T. 31). Clearly, the seizure of the money was within the scope of the search authorized by Anderson's consent, *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980), and therefore, the police were required to obtain signed receipts from defendants.

## IV. Conclusion

In summary, the motions advanced by the defendants do not entitled them to a new trial.